**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Attorneys for Union Fidelity Life Insurance
Company

Isaac M. Gabriel, Esq. (#021780)
isaac.gabriel@quarles.com
Arturo A. Thompson, Esq. (#025070)
Arturo.thompson@quarles.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>C.M.B. III, L.L.C.,<br><br>          Debtor. | In Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-30496<br><br>**CREDITOR UNION FIDELITY LIFE INSURANCE COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, ALTERNATIVELY, FOR ADEQUATE PROTECTION** |

UNION FIDELITY LIFE INSURANCE COMPANY ("Union Fidelity"), a secured creditor in the above-captioned Chapter 11 bankruptcy case of C.M.B. III, L.L.C. (the "Debtor"), hereby files its motion for relief from the automatic stay (the "Motion"). The Debtor owns and operates a mixed-use commercial complex located at 13450-13610 N. Black Canyon Freeway, Phoenix, Arizona (the "Property"), and fits the definition of a single asset real estate company as set forth in 11 U.S.C. §101(51)(B).[1] Pursuant to Bankruptcy Code §362(d), Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Rule 4001-

---

[1] Union Fidelity has filed a motion to determine the Debtor as a single asset real estate debtor. A final hearing is set for January 7, 2011 on the motion.

QB\135106.00008\11620436.3

1 of the Local Rules of Bankruptcy Procedure for the District of Arizona ("LR"), Union Fidelity seeks relief from the automatic stay to enforce all its rights, liens, and remedies against the Debtor's Property (defined below) and the Rents.  Union Fidelity is entitled to relief from the automatic stay for at least the following reasons:

(i) Under §362(d)(1) for "cause" due to a lack of adequate protection resulting from the postpetition depreciation of the Property due to expiring leases, lack of proper maintenance, accruing postpetition tax liabilities, and lack of adequate protection in accruing rents;

(ii) Under §362(d)(2) because there is no equity in the Property and there is no reorganization in prospect; and

(iii) Under §362(d)(3), if the Debtor fails to prepare a plan of reorganization that can be confirmed within a reasonable time or fails to make interest payments following 30 days after the determination that the Debtor is a "single asset real estate" debtor as that term is defined in Bankruptcy Code §101(51)(B).

This Motion is supported by:  (i) the attached Memorandum of Points and Authorities; and (ii) the entire record before the Court in this Chapter 11 bankruptcy case.  Union Fidelity reserves the right to submit additional evidence and authorities in support of its Motion.

RESPECTFULLY SUBMITTED this 30th day of November, 2010.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By  /s/Isaac M. Gabriel
    Isaac M. Gabriel
    Arturo A. Thompson
    *Attorneys for Union Fidelity Life Insurance Company*

QB\135106.00008\11620436.3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  FACTUAL BACKGROUND.**

1. On September 23, 2010 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned Bankruptcy Case.

2. The Debtor owns a mixed-use commercial complex located at 13450-13610 N. Black Canyon Freeway, Phoenix, Arizona (the "Property").

3. The Debtor's income is derived from rents generated by the Property.

4. Union Fidelity asserts that the Debtor is a Single Asset Real Estate debtor as defined in 11 U.S.C. §101(51B).

**The Secured Loan**

5. On or about September 7, 2006, Union Fidelity made a loan to the Debtor evidenced by, among other things, a Promissory Note dated September 7, 2006, in the original principal amount of $18,000,000.00 (the "Note") executed by the Debtor in favor of Union Fidelity. See Note at Exhibit "A".

6. Union Fidelity asserts the obligations owing to it by the Debtor are secured by a first priority lien and security interest in a variety of collateral (the "UF Collateral"), including, but not limited to, the Property improvements thereon, as well as all rents and income generated therefrom, pursuant to the Deed of Trust, Assignment of Rents and Leases, and Security Agreement (also constituting a Fixture Filing) (the "Deed of Trust") dated September 7, 2006. See Deed of Trust at Exhibit "B".

7. The Note, the Deed of Trust, and all related loan and security documents and amendments or modifications thereto, are collectively referred to herein as the "Loan Documents".

| | |
|---|---|
| 1 | 8. Union Fidelity asserts that all cash in the past, present or future |
| 2 | possession of the Debtor generated by, through or as a result of the UF Collateral or otherwise |
| 3 | subject to the security interests created by the Loan Documents was and is the cash collateral of |
| 4 | Union Fidelity (the "UF Cash Collateral"). |

**Defaults under the Loan Documents and Related Facts**

9. Prepetition, the Debtor defaulted under the Loan Documents by (among other things) failing to make the payments due for August and September of 2010.

10. On September 3, 2010, Union Fidelity notified the Debtor of its default under the Loan Documents and exercised its rights in the Rents (as defined in the Deed of Trust), demanding that all Rents be held in trust for the benefit of Union Fidelity.

11. Based on rent rolls and other documents provided by the Debtor to Union Fidelity, the Property is generating substantial gross rents and other income in the amount of approximately $250,000 per month.

12. On September 14, 2010, in response to the failure to pay rents, Union Fidelity filed a Complaint For Appointment Of A Receiver *Ex Parte* (the "Receivership Complaint") in Maricopa County Superior Court, thereby commencing in Case No. CV2010-027090 to enforce its rights and remedies.

13. The Superior Court set a hearing on the Receivership Complaint for September 24, 2010.

14. On September 23, 2010, the Debtor filed the above-captioned Bankruptcy Case.

15. As of August 31, 2010, the outstanding amounts owing from the Debtor to Union Fidelity were at least $17,033,009.78, including principal, accrued interest and late charges.

QB\135106.00008\11620436.4

**The Debtor Cannot Generate Sufficient Revenues to Cover Its Costs**

16. As set forth in the Debtor's cash collateral motion and the objection thereto filed by Union Fidelity, the near term expenses the Debtor faces exceed the value of the UF Cash Collateral the Debtor has on hand, and that it will be able to generate by collecting rents going forward. See Docket Nos. 26 and 33, respectively.

17. Based on a recent inspection, the Debtor is liable for approximately $985,000 in deferred maintenance, for, among other things: (i) upgrading the onsite APS substation for approximately $700,000; (ii) replacing all fire panels at the approximate cost of $105,000; and (iii) replacing two elevators and two elevator shafts at an estimated cost of $180,000.

18. Leases with major tenants are set to expire over the next 5 to 12 months, and even if these tenants renew their leases, they are certain to demand lower rental rates, further submerging the Debtor's cash flows and ability to cover expenses.

19. The Property is approximately 80% vacant at this time. The Debtor does not have any cash reserves for the build-out of tenant improvements for new tenants.

20. The Debtor does not have escrow reserves for property taxes that are accruing postpetition. On April 1, 2011, $242,801.40 will be due for property taxes accrued for the second half of 2010.

21. The Debtor admits that it transferred $1,405,000 to an insider, CMB II, between August 5, 2010 and August 20, 2010, less than 20 days before the Petition Date. See Statement of Financial Affairs, Question 23, [Docket No. 17]. Union Fidelity made written demand on November 8, 2010 for the Debtor to pursue such transfers. See letter attached hereto as Exhibit "C". The Debtor has responded that it does not intend to pursue the transfers, notwithstanding that they appear to be clear preferential payments avoidable under Bankruptcy Code §547.

QB\135106.00008\11620436.4

22.     An appraisal of the Property completed as of September 8, 2010 (the "Appraisal"), establishes a value for the Property of at least $11,700,000. See Appraisal at Exhibit "D".  Accordingly, there is no equity in the Property.

23.     After expenses, the Property generates approximately $80,000 - $100,000, all of which constitutes the cash collateral of Union Fidelity.

24.     The Debtor has not made any payments to Union Fidelity since July, 2010, and the Debtor has not offered to make any adequate protection payments to Union Fidelity postpetition.

## II.     LEGAL ARGUMENT.

Pursuant to Bankruptcy Code §362(d)(1), relief from the automatic stay shall be granted "for cause," including, without limitation, lack of adequate protection. 11 U.S.C. §362(d)(1). In addition, a party with an interest in property is entitled to relief from the automatic stay if: (i) the debtor lacks equity in the property and (ii) the property is not necessary for an effective reorganization that is in prospect. 11 U.S.C. §362(d)(2); United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 375-76 (1988). In the context of a single asset real estate case, a creditor will be entitled to relief from the automatic stay pursuant to §362(d)(3), unless within 90 days of the court's order for relief or 30 days of the court's determination that §362(d)(3) applies, whichever is later, (i) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (ii) the debtor has commenced monthly payments. 11 U.S.C. §362(d)(3)(A)-(B).

The standards for relief set forth in §§362(d)(1), (2), and (3) are independent and alternative. See §362(d)(1)-(3); In re Sun Valley Ranches, Inc., 823 F.2d 1373, 1376 (9th Cir. 1987) (stating that §362(d) is disjunctive and stay relief may be granted if only one provision applies); In re Duvar Apt., Inc., 205 B.R. 196 (B.A.P. 9th Cir. 1996) (stating that the court may grant stay relief under any of subsections (1), (2), or (3)). A movant requesting stay relief has the

-4-

QB\135106.00008\11620436.4

burden of proof <u>only</u> on the issue of the Debtor's lack of equity in the property under §362(d)(2). 11 U.S.C. §362(g)(1). The Debtor has the burden of proof with respect to all other issues raised under §362(d). 11 U.S.C. §362(g)(2); <u>In re Gauvin</u>, 24 B.R. 578, 580 (B.A.P. 9th Cir. 1982) ("It is therefore clear that §362(g) puts the burden on the debtor"); <u>accord</u> <u>In re Jordan</u>, 392 B.R. 428, 450 n.40 (Bankr. D. Idaho 2008). Applying the foregoing standards, Union Fidelity is entitled to stay relief under each independent basis for relief set forth in Bankruptcy Code §362(d)(1), (2), and (3).

### A. **Union Fidelity Is Entitled To Stay Relief "For Cause".**

Pursuant to Bankruptcy Code §362(d)(1), relief from the automatic stay shall be granted for "cause," which includes, but is not limited to, the lack of adequate protection. 11 U.S.C. §362(d)(1). "Cause" is not defined in the code; therefore, its existence must be determined on a case-by-case basis. <u>In re Conejo Enters., Inc.</u>, 96 F.3d 346, 352 (9th Cir. 1996).

One form of cause for relief is the lack of adequate protection of an interest in property. 11 U.S.C. §362(d)(1). Section 361 sets forth three non-exclusive means of providing adequate protection: (1) periodic cash payments (or a lump sum cash payment); (2) additional or replacement liens; or (3) the realization of the "indubitable equivalent" of the secured creditor's claim. 11 U.S.C. §361. If the Debtor cannot prove that Union Fidelity is adequately protected, Union Fidelity is entitled to stay relief for cause. <u>See</u> <u>In re Mellor</u>, 734 F.2d 1396, 1400-01 (9th Cir. 1984); <u>In re Mallas Enters., Inc.</u>, 37 B.R. 964, 967 (B.A.P. 9th Cir. 1984); <u>In re Jordan</u>, 392 B.R. at 447-48.

Moreover, the Ninth Circuit has held, in accordance with Bankruptcy Code §552(b), that post-petition rents generated by a debtor's real property constitute separate, additional collateral for a secured creditor with a deed of trust lien on the real property. <u>In re 1441 Veteran Street Co.</u>, 144 F.3d 1288, 1292 (9th Cir. 1998). Thus, those rents cannot act as a means of adequate protection, because they are, themselves, a separate part of the creditor's

-5-
QB\135106.00008\11620436.4

collateral, and the creditor is entitled to adequate protection on them as well. See <u>Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)</u>, 115 F.3d 650 (9th Cir. 1997); <u>In re Arden Properties, Inc.</u>, 248 B.R. 164 (Bankr. D. Ariz. 2000) (citing to <u>Ambanc</u>); see also <u>In re Paradise Springs Assocs.</u>, 165 B.R. 913, 926 (Bankr. D. Ariz. 1993) (post-petition rents are collateral distinct from the underlying real estate); <u>Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship</u>, 248 B.R. 668, 686 (D. Mass. 2000) (in a case involving an undersecured creditor, "collateral consists of the sum of the creditor's separate security interests in the buildings <u>and</u> the accumulated post-petition rents.") (emphasis in original); <u>In re Bloomingdale Partners</u>, 155 B.R. 961, 976 (Bankr. N.D. Ill. 1993) ("Taken together, sections 506(a) and 552(b) require that [secured creditor's] post-petition security interest in rents be added to its separate security interest in the [underlying real property].");[2] <u>In re Columbia Office Assocs. Ltd. P'ship</u>, 175 B.R. 199, 202-03 (Bankr. D. Md. 1994) ("By virtue of Section 552(b), the perfected prepetition security interest of [secured creditor] extends to the net rents accumulated by the debtor postpetition. Therefore, the accumulated rents must be added to the real property in the valuation of [secured creditor's] secured claim."); <u>In re Gramercy Twins Assocs.</u>, 187 B.R. 112, 120 (Bankr. S.D.N.Y. 1995) ("[A]n assignment of rents represents a security interest . . . distinct and separate from the mortgage on the real estate."); <u>In re Vermont Investment Ltd. P'ship</u>, 142 B.R. 571, 573 (Bankr. D.C. 1992).

The issue of accrual of rents postpetition as part of a secured creditor's collateral is also discussed directly in <u>Collier on Bankruptcy</u>:

> However, [Bankruptcy Code] section 552(b) recognizes the postpetition validity of a security interest in rents if the creditor also has a security interest in the underlying real property. . . . Because the rents serve as additional collateral, the value of the collateral increases with each rent collection, and the secured creditor is

---

[2] In <u>Bloomingdale</u>, the court notes that failing to count the security interest in rents as part of the creditor's secured claim "would render §552(b) a practical nullity and theoretical absurdity." 155 B.R. at 976.

-6-

QB\135106.00008\11620436.4

> already entitled to the increase in the value of the rents over time, independent of the increase or decrease in the value of the real property. <u>Any payment to the creditor of the rents is a transfer of its own collateral</u>. Therefore, the better view, the "addition" view, is that the payments from assigned rents should not be applied to the real property secured claim. . . . This seems to have become the majority view.

3 <u>Collier on Bankruptcy</u>, ¶361.03[2][a] (15th ed. 2009) (emphasis supplied).

Another commentator reached the same conclusion in an article addressing this issue. <u>See</u> Sally S. Neely, "Postpetition Rents And The Claims Of Undersecured Creditors With Assignments Of Rents In Chapter 11 Cases," SG108 ABA 221 (2002). Ms. Neely explains that, under the majority view, "[n]et rents must either be paid to the secured creditor during the case or sequestered for application at confirmation. Furthermore, <u>if the underlying collateral is declining in value, payment to the creditor of net rents cannot be used as adequate protection</u> given that, under this approach, the secured creditor is already entitled to the net rents as a separate part of its collateral." <u>Id.</u> at 236 (emphasis supplied).

In this case, there is no equity in the Property. As of the Petition Date, the Property had a value of $11.7 million, and the Debtor had approximately $500,000 in rents constituting Union Fidelity's cash collateral. Further, all postpetition net rents must be added to Union Fidelity's secured claim, and are in addition to the Union Fidelity's collateral in place as of the Petition Date. However, the Debtor is not adequately protecting Union Fidelity's interest in the Property or the rents. Instead, upon information and belief,[3] the Debtor now has less cash collateral than it had on the Petition Date. The Debtor is not remitting net rents to Union Fidelity, has not offered Union Fidelity any adequate protection for this decline in Union Fidelity's secured claim.

Moreover, due to the Debtor's mismanagement of the Property and preferential

---

[3] The Debtor has failed to file an operating report in this case and therefore the Debtor's true cash position is unknown at this time.

QB\135106.00008\11620436.4

1 distributions to its equity holders, the Debtor's "plan" in this case is to continue to deplete Union
2 Fidelity's rents postpetition while offering no adequate protection.  The property taxes due in the
3 Spring of 2011 will exceed $250,000.  The deferred maintenance on the Property is nearly $1
4 million. Even assuming the Property will continue to generate net rents of $100,000 per month --
5 something highly unlikely given the expiring leases and the rent concessions that will likely have
6 to be made to retain the existing tenants -- net rents accrued for the next six (6) months will be
7 insufficient to pay the property taxes and maintenance.  And, regardless of whether the Debtor
8 applies all rents to the deferred maintenance and property taxes, the cash position of the Debtor as
9 of April, 2011 will be zero.  Worse yet, this assumes that no payments are made to service the
10 indebtedness owed to Union Fidelity.

Thus, absent some form of adequate protection, Union Fidelity will continue to suffer an ever growing harm as the value of its collateral (including rents) declines with each passing day.  The Debtor has no equity in the Property, nor other assets or sources of revenue with which to adequately protect Union Fidelity for this growing loss.

Because the Debtor is not adequately protecting Union Fidelity's interest in the Property and the accruing rents, "cause" exists to immediately lift the stay under §362(d)(1), and such relief should be granted to Union Fidelity accordingly.

B. **Union Fidelity Is Entitled To Stay Relief Pursuant To Bankruptcy Code §362(d)(2).**

While supported by many of the same factors, the standard for relief pursuant to Bankruptcy Code §362(d)(2) is independent from the "cause" analysis undertaken with respect to §362(d)(1). In accordance with §362(d)(2), relief from the stay shall be granted where there is no equity in the subject property for the debtor and the property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2).

QB\135106.00008\11620436.4

1. **There is no equity in the Property for the Debtor**.

For purposes of stay relief, "equity exists if the value of the property exceeds all claims secured by such property." In re Jordan, 392 B.R. at 450 n.40. Further, collateral must be evaluated in the hands of the creditor. La Jolla Mortgage Fund v. Rancho El Cajon Assoc., 18 B.R. 283, 290 (Bankr. S.D. Cal. 1982). Thus, the market value of the subject property must be reduced by an amount sufficient to account for a liquidation price discount and estimated costs of liquidation. Id. (deducting 7% from the value of the property to account for costs of liquidation); In re Robbins, 119 B.R. 1 (Bankr. D. Mass. 1990) (stating that liquidation value is appropriate and 15% is an appropriate liquidation price discount).

As set forth above, a recent appraisal obtained by Union Fidelity shows that there is no equity in the Property. Accordingly, the first prong of the test for relief under §362(d)(2) is satisfied.

2. **The Property is not necessary for an effective reorganization.**

If the court finds that a debtor has no equity in property under §362(d)(2)(A), to maintain the protections of the automatic stay, a debtor must establish that the property is, nevertheless, necessary to an effective reorganization. In re A Partners, LLC, 344 B.R. at 126. Additionally, a debtor has the burden to demonstrate not only that the property is needed for an effective reorganization but "that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a reasonable possibility of a successful organization within a reasonable time." United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. at 375-76 (emphasis added). Accordingly, the debtor's reorganization plan cannot be wholly speculative, based upon a visionary scheme, or unlikely to be confirmed. See In re Wiersma, 324 B.R. 92, 112 (B.A.P. 9th Cir. 2005); In re A Partners, LLC, 344 B.R. at 126 (citing In re Pizza of Haw., Inc., 761 F.2d 1374, 1382 (9th Cir. 1985)); In re Bach, 2007 WL 39342 at *4

1  (Bankr. D. Ariz. 2007) (the court should not be left to "speculate about important elements and
2  issues relating to the likelihood of an effective reorganization").

No effective reorganization is in prospect. The record before the Court demonstrates that even if all the UF Cash Collateral in the Debtor's possession, and additional cash collateral it might collect in the form of rents, were applied against its near term liabilities, it would not have sufficient revenues to cover its deferred maintenance and property taxes. In addition, any decrease in rents due to the loss of a tenant or rent concessions provided for a lease renewal will be fatal. And, because the Debtor has no cash or reserves for the completion of tenant improvements, the Debtor cannot attract new tenants to increase revenues. In short, the financial realities of the Debtor's bankruptcy case are that the Debtor cannot propose a plan that is anything but a speculative and visionary scheme with no realistic hope of success. With no reorganization in prospect, then it is necessarily the case that the Property cannot be necessary to and effective reorganization.

Accordingly, stay relief is proper under the entirely independent bases found in §362(d)(2) of the Bankruptcy Code.

C. **In the Event the Debtor is Determined to be a Single Asset Real Estate Debtor, The Court Must Grant Relief From The Automatic Stay Thirty Days Thereafter**.

Where acts against a single asset real estate debtor are stayed, the debtor must show that it can either file a plan of reorganization that has a "reasonable possibility of being confirmed within a reasonable time," or that it has commenced monthly payments in an amount equal to interest at the contract rate specified in the loan documents. §362(d)(3). These requirements must be met within 30 days after the court's determination that the Debtor is subject to §362(d)(3). Id. Otherwise, the movant is entitled to stay relief pursuant to §362(d)(3). See, e.g., In re 652 West 160th LLC, 330 B.R. 455 (Bankr. S.D.N.Y. 2005) (granting stay relief where no plan was filed and only one interest payment was paid within 90 days); In re Syed, 238 B.R.

1   126, 132-33 (Bankr. N.D. Ill. 1999) (lifting the stay when neither a plan was filed nor monthly payments were made within 90 days); In re LDN Corp., 191 B.R. 320, 326-27 (Bankr. E.D. Va. 1996) (granting stay relief where no plan was filed within 90 days). The In re LDN Corp. court held that "relief under §362(d)(3) is <u>mandatory</u> where its provisions are not strictly complied with." In re LDN Corp., 191 B.R. at 327 (emphasis added). The Bankruptcy Appellate Panel of the Ninth Circuit has adopted this interpretation. See In re CBJ Dev. Inc., 202 B.R. 467, 470 (B.A.P. 9th Cir. 1996) (quoting In re LDN Corp., 191 B.R. at 327).

In this case, the Court has set a final hearing on the single asset debtor issue for January 7, 2011. If the Debtor is determined to be a single asset debtor, and if the Debtor fails to commence interest payments or otherwise file a viable plan of reorganization within 30 days of such determination, then Union Fidelity will be entitled to automatic stay relief as of such date.

D. **In the Alternative to Stay Relief, All UF Cash Collateral Not Specifically Approved For Use In The Debtor's Cash Collateral Budgets Should be Immediately Turned Over To Union Fidelity As Cash Collateral**.

The Debtor cannot, when all its actual expenses over the near term are accounted for, pay the costs of its operations; much less service its indebtedness to Union Fidelity. However, to the extent the Debtor asserts otherwise, all UF Cash Collateral in excess of the budgets it proposed under the approved cash collateral order should be sequestered and remitted to Union Fidelity immediately. As set forth above, Union Fidelity's collateral is diminishing, and the ephemeral nature of cash collateral means that once dissipated it is nearly impossible to recover.

Given the Debtor's position that these additional sums are not necessary to its operations, and the risks and costs imposed on Union Fidelity by this Case, ordering that the UF Cash Collateral be sequestered and remitted to Union Fidelity will, at a minimum, mitigate the potential harm to Union Fidelity while not prejudicing the Debtor. Thus, to the extent the Court

-11-

does not modify the automatic stay, Union Fidelity requests that the Court order all net rents be remitted to Union Fidelity as adequate protection.

### III. **CONCLUSION**.

Based on all of the foregoing, Union Fidelity respectfully requests that the Court enter an Order:

A. Directing all applicable stays and injunctions, including the automatic stay of Bankruptcy Code §362(a), be vacated, terminated, and annulled so that Union Fidelity may exercise all of its rights and remedies with respect to the Property and all rents generated by the Property;

B. Alternatively, direct that all UF Cash Collateral collected by the Debtor in excess of those sums approved for use in the Court's cash collateral Order be sequestered and immediately remitted to Union Fidelity on a going forward basis; and

C. Granting Union Fidelity such other and further relief as the Court deems just and proper under the facts and circumstances of this case.

RESPECTFULLY SUBMITTED this 30th day of November, 2010.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391


By /s/Isaac M. Gabriel
　　Isaac M. Gabriel
　　Arturo A. Thompson

Attorneys for Union Fidelity Life Insurance Company

-12-

COPIES of the foregoing sent
via e-mail this 30th day of
November, 2010, to:

Richard M. Lorenzen
Perkins Coie Brown & Bain P.A.
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
Email: rlorenzen@perkinscoie.com
Attorneys for Debtor

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
E-mail: USTPRegion14.PX.ECF@USDOJ.GOV

COPIES of the foregoing without exhibits
sent via U.S. mail this 30th day of
November, 2010, to all parties on
the Court's Master Mailing List
attached hereto as Schedule 1

    /s/Vicky Shelby

QB\135106.00008\11620436.4